All right, our fourth case for this morning is Jones v. Carter. I'll give you a minute to get settled, Mr. Craft, and then you can come. Good morning. Still morning. Yes. Good morning, Chief Judge Wood. May it please the court. This is not a case where a prison has prohibited an inmate from obtaining something that his So to establish a substantial burden, Jones had to prove that the cost of purchasing halal meat from the commissary was excessive. Can I ask you whether you think the prison, under your theory, during Passover could charge Jewish prisoners for matzah? I don't think so under our theory, because in that respect, if I understand the It would be a different food item, so it's not in the usual food package that everybody gets. During Passover, it's a religious requirement. So could they charge for the matzah? I would say no, because if I'm understanding the religious tenant correctly, if they don't eat the matzah, if they have to eat something else, then they wouldn't be getting the adequate nutrition for those meals or for those days. Have you ever had matzah? I have not, I'm sorry. No nutrition. It actually isn't. My point being that I'm trying to think of something that is a religious, an affirmative religious requirement during the Passover. One of the primary things is that the flight from Egypt required, you know, taking the bread that was not yet risen. And so it's one of the essential parts of the Passover seder involves matzah. And so if you don't think you can charge the prisoners for that essential food, which wouldn't otherwise be in a food package, I'm sure, well, it's not that tasty, actually, that's true. I don't know why for Mr. Jones, not a class action, easy for the prison to do when he says with the endorsement of the imam, my version of Islam requires me to have some meat. Why you don't have the same obligation that you would for the matzah? Well, I want to correct, I apologize for not knowing the intricacies of matzah and the Jewish faith. But the, I answered the question on the understanding that that was a meal, that it was a full nutritious meal that would replace everything else. There are full nutritious meals that any Jewish person can eat during Passover, but during that, I think it's an eight day period of time, several day period of time, and I'm not Jewish. So I probably should shut up. I'm thinking you converted. There's a period of time in which there is a prescribed set of things that you eat in commemoration of the flight from Egypt. And so it's a religiously dictated diet that has nothing to do with nutrition. It has everything to do with religious observance. If that were the case, then I think the prison could charge, or require the inmates to at least make reasonable attempts to secure it themselves. But see, that's one point that, you know, I mean, you argue that he could purchase halal meat on his own, but isn't that effectively an argument that his religion is not burdened because the food restriction didn't render compliance with his religion impracticable? And isn't that the test for substantial burden that has since been rejected? Well, Your Honor, I want to clarify something on the reluptus substantial burden standard. So Schlemm, absolutely correctly. Could we start maybe with Hobby Lobby? Yes. That was my next question. Okay. Yeah, right. So Hobby Lobby and Holt, if I may, both involve obviously coercive choices. And when you read what the Supreme Court's saying there, the Supreme Court's saying there's a substantial burden because in Holt, he either had to shave in violation of his religion, or he faced serious disciplinary action. And in Hobby Lobby, they either had to provide contraceptive coverage, or they faced massive fines. But we don't know. Here's an interesting thing about these fines. The Supreme Court was not interested in looking into Hobby Lobby's ability to pay the fines. So I don't know, as I sit here, whether that was 1% of Hobby Lobby's annual income, whether it was 40% of Hobby Lobby's annual income, or anything else. And so if you look at Mr. Jones, the record tells us on average he spends about 50 to 60 months at the commissary on all products, food, hygiene, other such things. But he only makes 36 to 42 months, so there's a shortfall of anywhere from $8 to $18, even if he doesn't buy any soap, he doesn't buy any shampoo, he never buys a stamp. And so I'm having trouble, if we're not going to look at ability to pay, it seems like the state's saying, well, he can just go buy it himself. Why couldn't you say to a Catholic prisoner, we're going to require you during Lent to buy your own meat-free products? On your theory, I think that you could do that. Well, I... There's the commissary, happy to sell you soy. No, I don't think our theory would allow that, and I think Nelson itself would foreclose that, but the inquiry in that case... Why not? It's just, it's not all Christians who have to refrain from meat during Lent, it's certain Christians. Well, because the key in these sort of regular religious diet cases has been in this circuit since 1990, nutrition. Whether the inmate's forced to choose between adequate nutrition or, I'm sorry, and eating something that's prohibited by his religion. So in Hanafah, the offender had to either eat pork in violation of his Islamic faith, or he had to eat nothing. But that's why my Passover example's important, because certainly adequate nutrition is one possible way that this is going to come up. But there are some religions, including Judaism, but not limited to, where the religion also And so, I don't know why one's religious observation wouldn't be substantially burdened by depriving a person, at least in a way that doesn't meet the relupa standards. There's no compelling interest, and there's no substantial burden on the state here to giving Mr. Jones these meals, in fact, he's willing to take kosher as a substitute for halal, and the Venn diagrams overlap substantially, but not completely. I understand, but I think that this goes to the second line of So you don't think there's ever any case when a religion requires the consumption of an item that the state has an obligation to provide that item? If the inmates cannot It's part of the diet, I don't mean, oh, suppose he loses his prison job, suppose the prison's on lockdown for a month, would you agree that you have to provide him the diet at least then? Yes, if he's indigent, I think we sort of stake that position out in our brief. That's sort of the approach that Love took. You see, by providing free of charge meals that meet the religious needs of other inmates, but requiring him to pay out of pocket for the meat he seems to need to meet his religious needs, wouldn't the prison's food limitations effectively exert pressure on him to abandon his own religious beliefs and conform to the religious practices that seem to be supported by the prison? No, as long as he's not truly indigent, he So how much does he have to spend down on the food? Is he allowed to buy soap, in your view? Yes, there are certain Is there some limit that he's allowed to keep his prison? Suppose he owes money to a court because he's a frequent filer, so every month they take out of his prison account, you know, $4.73 to continue his payments for his filing fees, which is what you can do if you haven't struck out. So, I mean, you're just looking at his account, but we don't know what demands there are on that account. And you're willing to assume that maybe some personal hygiene is going to be deducted from this, and surely his court fees would be deducted from this. Maybe he needs over-the-counter medicine. So I think the approach you've taken out, two things I want to mention. First off, the department has mechanisms in place already to judge sort of day-to-day, week-to-week indigency for purposes of covering legal mailing fees and also for purposes of providing an indigent toilet treats bag. So when someone can't afford soap, the department has that in stock. And that was not done here, is that correct? That indigent determination was not made in this instance, correct? That's correct, Judge Brennan. And in fact, the record here doesn't tell us how much the commissary meet costs, also doesn't tell us how... The state has his sort of off-band, oh, it's only a few bucks. But if that's true, he's going to run short every month. Well, and that is just an assumption. But I think it's important, just as the state has the evidentiary burden on the compelling interest standard, the prisoner has the evidentiary burden on substantial burden on that aspect. I'm very uncomfortable with the rule that would require us to say only indigent defendants have the right to a religiously appropriate diet. That's not the rule we're asking for. That's the rule you are asking for, because if you have enough money, you have to pay for some of the items that make your diet religiously appropriate. So you say only people who are really poor have an actual constitutional right to a religiously appropriate diet. It doesn't burden the prison in the slightest on this record. No, I'm not saying that. What I'm saying is that the Act is not an affirmative obligation to states to provide fully compliant religious diets. What the Act says is that states can't... Don't substantially burden. Exactly. And I'm saying using your own money in the impoverished circumstances of at least Mr. Jones, maybe there's some prisoners, maybe when Martha Stewart was in prison, if she had some diet, she could afford it, but not Mr. Jones. And I'd like to sort of get back to that point about the wealth. You're right, Supreme Court didn't ask whether Hobby Lobby could afford it, but that's because $475 million was just so big. It's not that big. If you're Amazon, $475 million is nothing. Frankly, I don't know where Hobby Lobby was in this report. Right, and there's going to be a point where... So it might not have been burdensome to Hobby Lobby, but they just said, boy, that looks like a big number to us, and so it's enough. There's going to be a point at which the cost will be a substantial burden even if the inmate is wealthy. But before we can even make that determination, we have to know a few things. How much does the religious meat cost? How much... I'm rejecting the relevance of what you're talking about. I don't know why, under RLUIPA, inmates who can show a bona fide religious practice, which is not contested here by the state, you have the testimony of the imam that there is a branch of Islam, I didn't even know that before this case, but anyway, a branch of Islam that's like this. Why they cannot say this is a substantial burden and move the state over to the defenses that the statute gives you. If you could show that there was a compelling interest not to give him the meat, fine. If you could show that it would be... that there's a less restrictive alternative, that's available to the state, but I don't know why we don't reach that point in this case. Because it reads the adjective substantial out of the statute. It asks just whether there's a burden. But all of the evidence in this case... Well, first of all, it is a substantial burden insofar as a man who earns $36 to $42 a month, who needs 8 servings of meat a week, is somehow told you have to go buy it? That's why I'm trying to figure out what other religious practices... Suppose the Catholic group wants to celebrate communion and they're told, well, you guys have money in your account, go out and pay for the materials that are needed for Holy Communion. And I think when you talk about... Would that be fine? The case law is different with the ceremonial foods. So you look at Shlem, Abdu'l-Hasib, and Haidt. All three of those cases dealt with absolute prohibitions. What was wrong there was that the prison refused the inmates' offers to try to acquire it themselves. Now, if the inmates try to acquire it themselves and they can't afford it or they can't find people to donate it, then the substantial burden inquiry becomes more on the prison's shoulders instead of the inmate's choice of what to buy with his own money. I think it's important to remember here that Mr. Jones says... Why is the beard... You think of the other things that have been found in the cases to satisfy the substantial burden test, and it seems to me that the state here is really upping the ante quite a bit. May I answer? Please do, yeah. And I'm going to give you a minute to rebut because... Thank you. So, with the beard, there's no alternative means to engage in that particular exercise. There's no alternative means to grow a beard if you're not allowed to grow a beard. Here, there's an alternative means to eat halal meat. Okay.  Thank you. Mr. Benz. Thank you, Your Honor. May it please the Court. Charging inmates for a religious diet is a substantial burden on religious exercise, and the DOC is incorrect in asserting that an inmate must face starvation before he can assert an RLUPA claim. So, is it your view that any expenditure at all, automatically... Suppose he's told there's a five-cent co-pay if you're going to get the halal or the kosher diet. Anything makes it substantial? I think for an inmate like Mr. Jones, and this is putting aside Martha Stewart and someone who's independently wealthy and may have different factual scenario, he is substantially burdened because of his source of income. His source of income comes from two places. One, he has to work a job, which, as the Court recognized, can be suspended if the facility's on lockdown, which happens quite frequently. Secondly, if he's moved, as he has been in the course of this litigation, or he has to depend on charity from the outside. And as the Tenth Circuit recognized in Abdul Hasib and Birhaid, a prisoner under RLUPA cannot be forced to rely on the charity of outsiders to provide for their religious exercise. So, can I ask, the rule you're asking for here, it sounds to me from this answer, is very much rooted in Mr. Jones's financial situation and that there is no across-the-board rule prohibiting the state from expecting people to use their own resources for this kind of religious practice. Yeah, there could be other scenarios, I can imagine, where this rule might not apply. You know, and I think it's important, as the Fifth Circuit does in Musazadeh, they differentiate an essential governmental benefit, like food, from devotional accessories, like a Bible or prayer oil or something like that, which the government doesn't have an obligation to provide. So that's where the substantial burden comes from here. Was the district court presented with the argument that there was no substantial burden because he could purchase the meat on his own? Yes, this was presented in a brief by the state, but it wasn't sort of the central argument they were making. But again, we have to think about procedurally where this case... I mean, is a remand necessary to develop the factual record as to his financial means? I don't believe it is. I mean, this was an appeal from a trial, a bench trial. The court had substantial evidence in front of it on the paper, but nonetheless, that's subject to the clearly erroneous standard. And the judge here did credit Mr. Jones's testimony that he is substantially burdened because of where his finances come from. He testified... The indigency determination is going to be part of the analysis and was not done below. Indigency determinations are made on a routine basis by the prison officials. Why wouldn't that counselor do that? For certain things, prison filings, obviously the district court can determine indigency for postage, which I think is the example that the state gives here. But I think the difficulty in determining indigency in this case would be very difficult because of the nature of providing a daily diet three times a day and the variability of his income. So basically, any time he's on lockdown, any time his financial circumstances change, the court or the DOC has to go through this analysis. And I think the way they do it in their brief kind of points to the administrative nightmare that this would pose. They say you can't... They point to the fact that he spends money on other foods or that he buys Jolly Ranchers. So they're really saying that the DOC is going to go line by line, see what he's spending his money on and determine indigency that way. And that's very different than sort of a one-time court filing or determining whether he has enough for postage. There's a line here that we're trying to develop between subsidizing and then provision, right? And at some point, it's going to move over into being subsidy, right? At some juncture, regardless of the individual's determination on how much money they have on account, they're still going to have it paid for or pay for themselves. Help us draw that line. Why... Where do you see us drawing that line? Yeah, and the Supreme Court addressed this in Qatar, albeit in a footnote and kind of briefly. That was an Establishment Clause case. And in the context of that, they made the statement that, you know, for devotional accessories, the DOC wouldn't be expected to subsidize that. But they are expected to subsidize a religious diet. And that's what we're focused on here because the DOC has an obligation to provide a diet for every... a nutritionally adequate diet for every prisoner. And it costs more to create those kosher kitchens that they created. They are, in fact, subsidizing religious diets. Absolutely. They are providing that accommodation for Jewish inmates. And even the meat-based kosher diet, they are providing for inmates other than Mr. Jones. These are the trays that... This is what he wants, right? Yes, these are frozen trays that have meat, and I think about... I think it was 10 to 14 meals per week. Do we know if Mr. Jones is the only prisoner in this prison who belongs to this group? I don't think that's in the record. But again, as the imam testified, this is a belief that is held by other Muslims. We know that 16 other prisoners are getting these meat-based kosher trays. So it's far below... And this is one of the facts for why the DOC was not able to allege a compelling governmental interest. They're in the prisons that do not... that didn't get the kosher kitchen built out? Exactly. Yeah. Yes. That must have cost a fair amount of money to create a whole different kosher compliant... Yeah, and again, they contract out their food services to Aramark, and Aramark makes the determination. But it's important to note that the kosher trays, at least from the DOC's cost perspective, cost exactly the same amount as a regular DOC diet to any prison, about $1.28. About $1.89, so it's pretty cheap, right? I think $1.28. $1.28. I'm actually interested in Martha Stewart. If Martha was there and you were her attorney, would you still argue for the failure... that the failure to provide free, you know, non-vegetarian meals presented a substantial burden? You know, I think I would have a difficulty arguing that for Martha Stewart. Again, you'd have to look at her personal finances. Maybe she has payments to her... she's paying for college for her students. But again, you know, if you have a millionaire or billionaire, I think it's going to be really hard to make that argument. So which takes me back to... I mean, there are two ways of looking at this case. One is the broad sweep about the state's responsibilities to provide religiously appropriate diets when, you know, it's a genuine faith and the other criteria are present. And the other is on a much more granular, you know, fact base for this man. If you look at the amount of money he earned, he's going to run out of money about halfway through each month to get the diet. And does he have to spend down each month to poverty and then get the religious diets? Or has he shown enough to show that he's entitled... that it's substantially burdening him not to be able to purchase these... or not to be able to have the state furnish these kosher trays at no particular extra cost to itself? Right, and I think that this court can look to the Fifth Circuit again and the Tenth Circuit and see how they approach this issue. I think some courts say yes, there could be theoretically some prisoners who could... that wouldn't be substantially burdened by paying for the religious diet. But the vast majority are in Mr. Jones' situation. And I think the Tenth Circuit and Beerhide kind of did that analysis. I believe they wanted to charge $90 per month for a kosher diet. And the DOC looked at, you know, all the things that prisoners spend their money on, the difficulty of getting those funds in the first place, and concluded, you know, this is kind of a hopeless analysis. You know, most prisoners are entitled to a religious diet free of charge. Now, we don't have any issue in this case about the bona fides of the religious diet, I assume, because of the imam's testimony. I can think of some old cases where people have alleged that, you know, they needed shrimp rib eye and Dom Perignon once a week as part of the celebration of their religion. And surely those cases are correctly dismissed as not serious. Absolutely. And I think this court in Schlemm alluded to those cases. I think it was Chateaubriand and Sherry. But you can imagine, you know, that would certainly go to the sincerity prong. Is this really a sincere religious belief? But it would also obviously go to the compelling governmental interests, bringing alcohol into prison or sheer cost of providing steak. So our issue is, does he get over the significant burden part, recognizing that the state still has the opportunity to present its affirmative defenses if it can? Absolutely. And those were the focus of the DOC's argument at the district court level. Here, it's only substantial burden. And again, we have to assume the other two prongs are met. So for these reasons, we believe that a district court decision should be affirmed. One final question. Is there any evidence in the record about the 16 meat kosher trays? Any relation of them to anyone who subscribes to Mr. Jones' religious tenets? I don't believe so. I don't know if they're Muslim or Jewish. Okay. Thank you. Thank you. All right. Thank you, Mr. Mintz. And I promised to give you a minute, Mr. Kraft. So here's your minute. Thank you, Chief Judge Wood. I just want to make a point that the Abdul Hasib, Messizetta, and Bierheide cases involved payments to acquire adequate nutrition. The record here does not show how much the halal meat actually costs, nor does it show how often he needs it as a matter of religion, as opposed to some general sense of fairness. It also doesn't say there's nothing in the record about the serving size he needs. So we really can't even calculate what it would cost. I think it is important that he purchases other foods. Any consumer on public assistance has to make a choice as to whether they buy Cheetos and ramen noodles or they buy the food to fulfill their religious obligations. Judge Brennan, the 16 offenders on the meats, I'm not entirely sure whether they're all Muslim or Jewish, but they are there for reasons unrelated to religion. It's because they can't be housed at other facilities for security reasons or health reasons or one of them is a female. For all these reasons, we think he should remand. The district court applied the wrong standard by not considering the coercive influence of the government's requirement to purchase it through commissary. Thank you. All right. Thank you. Thanks to both counsel. We'll take the case under advisement.